All right, thank you. You can be seated. Mr. Green, whenever you're ready. May it please the Court. My name is Matthew Green, and I represent the appellant Tyre Johnson in the case at bar today. This case highlights the demarcation between a district court's deviating from the sentencing guideline and a district court disregarding the sentencing guidelines. In this case, the lower court committed reversible error in disregarding the expressed terms of the sentencing guidelines and failing to run Mr. Johnson's federal sentence concurrent with a related state sentence. If I may first speak to the standard of review, we maintain that the appropriate standard of review in this case is that of abuse of discretion. We note that in the Joint Appendix, Volume 1, starting at page 52, the defendant's sentencing memorandum, which was also again filed beginning on page 8, I'm not sure why. If we turn to page 54 of the Joint Appendix, Volume 1, the 24-year sentence of the state case was referenced in the sentencing memorandum. On page 55, the defense did cite to the sentencing guideline 5G1.3 and indicated the district court's authority to sentence concurrently and did request that a federal sentence run concurrent to the state sentence. And then again on page 56 in Volume 1, the notation that even a concurrent sentence would result in Mr. Johnson serving more jail time than the purported leader of the conspiracy, a Mr. Nareem. In addition, I would rely on Joint Appendix, Volume 1, page 68, the sentencing hearing transcript.  I was relying on page 74 and 75, first where the state sentence was referenced and then a request for imposition of a concurrent sentence. Let me ask you this. Yes, sir. If you called all of this to the district court's attention, what did the district court say? The district court did indicate, and I apologize if I may turn to that. At the sentencing transcript, the district court did indicate that it was not inclined to allow a concurrent sentence. In fact, on pages 77 and 78, I apologize? Concurrent sentence. You mean concurrent, what was it, 16 months concurrent with the unserved state sentence? Yes. The district court declined to impose any form of a concurrent sentence. And actually, the district court did not parse out the 16 months versus a different range. The district court, as a blanket with a broad stroke, declined to apply any form of a concurrent sentence whatsoever. We also contend that that does constitute reversible error. There was not an analysis. Tell me about that. The guidelines are so-called, quote, advisable now. They are. Do you think the district court committed reversible error by refusing to grant that under Section 5G1.3b? We do, and this is why. Step one, Judge Hamilton, is that the pre-sentence investigation report was admitted and made part of the record and deemed correctly calculated without objection. Step number two, we rely on Green v. United States, 436F3rd449. The specific page would be 457. And I would summarize, when calculating a sentence range, if a sentence is based on an error in construing or applying the guidelines, it will be found unreasonable and vacated. That is exactly what happened here. The district court did not calculate under 5G1.3. It didn't calculate at all whether or not a portion of the sentence should run concurrent, whether or not the entirety of the sentence should run concurrent. Yet, when we look at the pre-sentence investigation report, its plain meaning and its plain terms show that Subsection B of 5G1.3 was clearly satisfied, and I will use the term as indicated in Subsection B, the district court shall, it was supposed to have, ordered the sentence to run concurrent. That is, it's a rather straightforward argument. I would add one addition point. There were also fundamental inconsistencies of logic. At the end of the sentencing transcript, the lower court did summarize, saying that there was a total sentence of 235 months, and the district court did indicate that it was at the low end of the guidelines, and the district court said that it was imposing the low end of the guidelines because of three factors, one of which was there was no proof that Mr. Johnson was carrying a firearm. However, the purpose in imposing the low end of the guidelines was utterly defeated by the district court's failure to analyze and then apply Subsection B of 5G1.3. Consequently, we believe we do have an abuse of discretion, which resulted in an unfairly prejudicial error against Mr. Johnson. As a result, we believe this matter should be remanded for a rebriefing and a resentencing of the case. Unless the panel had additional questions, we would submit. Do you have any questions, Your Honor? Well, the Rouse case. Go ahead. The Rouse case, Your Honor. Talk about that. The Rouse case, we believe, in court's indulgence. Let me flip to it. We believe the Rouse case actually does assist us, first, on the standard of review. In Rouse, the defendant in that case, Judge Winn, did not cite to 5G1.3. In the defense's sentencing memorandum in this case, the defense did. In addition, I apologize. I'm trying to find the right section. The question on appeal in Rouse was whether the April 6 drug sale was fully taken into account in determining the offense level for the instant offense. In Rouse, it was examined through the lens of a plain error, which the court did find. This court did find that there was error, just not rising to the level of plain error. In this case, the details of Rouse were parsed out as to the applicability. Here, we would submit that because of the pre-sentence report being admitted without objection and made part of the record, we are, in essence, pushed back into the holding of green by this court, where that if the sentence range when calculated is not within the confines of the guidelines, that it becomes presumptively unreasonable. I hope that was a coherent answer. Well, I'm more interested in Rouse from the implication that that was a pre-Booker case. Rouse. And the effect of the post-Booker law in how we now view Rouse. I believe Rouse is limited because it was a pre-Booker case. I believe that, obviously, it's this court's decision, but I did not see an avenue of the creation of new law primarily because of green. While the sentencing guidelines are definitely advisory, they are. Post-Booker, as I understand it, concurrent was required, and you could ask for it, and I ask for it, it deals with that. Post-Booker is not required. It's a guideline sort of situation. So the imposition of a post-Booker concurrent sentence is a variance. Variance in the guidelines. I believe that goes back to my initial statement that this is a demarcation between a lower court deviating, engaging in a variance from the guidelines, as opposed to a district court disregarding the guidelines. Understood. And so then that goes to your argument that to reach that type of deviation, a variance, he must meet those criteria, among which is to consider the policy portion of the sentencing guidelines. And the policy portion of the sentencing guidelines favor finding this a concurrent sentence, but he didn't discuss it. He did not discuss it, and I would also note if Your Honor is referring to subsection C where it begins policy statement, it does begin with the phrase, in any other case involving an undischarged term of imprisonment, we are relying upon subsection B, which is a subroutine. It's a go-to list. And all aspects of Mr. Johnson's case apply and fall squarely within the terms of subsection B, and as a result, the court, under subsection 1 of that, shall adjust the sentence. Now, that again goes back to Green, where I have my documents in front of me. If a sentence is based on an error in construing or applying the guidelines, it will be found unreasonable and then vacated. The guidelines are advisable, but when they become applicable, when they become adopted and made part of the record, in this case without objection, then they govern. So the sentence is which? Substantively unreasonable or procedurally unreasonable or both? Isn't that a general analysis to determine whether it is? Isn't that what we look at when we view these things to first determine if it's procedurally unreasonable? If it is not, then we look at substantive unreasonableness, and then you get into the justification for the sentencing if there's a variance he has to provide these guidelines? Yes. I had not thought of it in that detail. However, I would begin to backtrack from that answer by stating, number one, that the lower court did not engage in any analysis whatsoever. As a result, although- Is that probably your strongest point on this? I believe it is. I'm just trying to – I don't know. I don't want to give you an argument for you. I'm just trying to understand where you've gone with this. I'm okay with that, Judge Wendy. But, I mean, it's fundamental in terms of what's going on here, is that if that is the point, is that the lower court pre-Booker is a mandatory type determination, and you've got the Rouse case that sets forth the law, and you lose if that's pre-Booker, because the Rouse clearly does it, but we're post-Booker. So that's not mandatory anymore. It's now, you know, you've got the sentencing guideline, but it now is a variance. And then there are rules in terms of how you now can reach a higher sentence. Precisely. And it must meet the procedural and the substantive reasonableness test. Which we believe this case did not. Okay. Let me ask you this before you sit down. I'm looking at Joint Appendix 54 and 55, and I don't see where you cite Section 5G13B. Yes, sir. If I may have the court's indulgence, I will find it and cite it. Well, I'll tell you, just look at page 55. The only thing you're citing to is 3553A factors. The sentencing memorandum, page 54, turning to page 55. I'm looking at 54 and 55. Looking at page 55 with the very first paragraph beginning with the word third, the very next sentence, under the guidelines, U.S.S.C. 5G1.3, comma, this court has the discretion to impose a sentence that is concurrent, partially concurrent, or consecutively to the defendant's related state court sentence. Well, that's not consistent with saying that it's mandatory. That's saying the district court has the discretion to impose a sentence that is concurrent, partly concurrent, or consecutive to the defendant's related state court sentence. I agree. I was imprecise. I was referencing that in terms of arguing that the standard of review in this case is abuse of discretion rather than plain error. Was this discussed with the district court? It was briefly in the sentencing transcript, Your Honor. And I will turn to that. Turning to page. I apologize. It's all right. I believe, and I'm about to run out of my time. I believe we are looking at page 75. It starts on 68. It starts on 68. Are you looking at 75? Yes. Actually, I would begin at the bottom of page 74. I believe this is defense counsel arguing to the district court. At the bottom of page 74, he states he received a 24-year state court sentence, and if this court were to sentence him to count one to a sentence within that guideline and were to run that sentence concurrent with the state court time, and then he goes on with his argument, then turning to the next paragraph on page 75, quote, I would hope that the court would consider running count one concurrently with the state court sentence. Well, all that is saying that the district court has the discretion to do that, and you would hope that he would apply that discretion. It does. Again, I believe it sufficiently preserves the issue for this court's review. Well, it comes down, if we're reviewing for plain error, then you've got to show that somehow or other the district court's unawareness of 5G 1.3 or failure to exercise his discretion or something like that interfered with his substantial rights. Now, there's nothing in this record that shows that the district court would impose any different sentence had he been aware, or she or he, whoever it was, of Section 5G 1.3B. Judge Hudson, we would respectfully disagree and argue that when the pre-sentence investigation report was adopted and made part of the record by the court without objection from any party and the court placed itself inside the calculation of the guidelines, the court then had to follow through. The court had to actually abide by the calculation of the guidelines that were already made part of the record. But you didn't tell the district court that 5G 1.3B was mandatory. That was not specifically briefed in detail before the district court. But again, we would go back, and we understand there's strictures of Rouse interpreting, I believe it's pronounced Oliano, with terms of preservation of the record. We believe that there has been a sufficient preservation of the record for this court's review under the abuse of discretion standard. And we again rely on the adoption of the pre-sentence investigation report. Thank you. Thank you, Your Honor.  Thank you, Your Honor. Good morning. May it please the court, my name is Olivia Norman. I'm an assistant United States attorney, and I represent the United States in this case. I also represented the United States below in the matter as it was pending before Judge Hudson. It appears that truly the sole error that we are discussing today, the sole error that was raised in the appellate brief, is whether or not the district court should have applied United States Sentencing Guidelines Section 5G 1.3 subpart B, and frankly, whether or not the court actually did consider 5G 1.3 subpart B. Was the court required to consider the factors in applying post-booker? Absolutely. In light of the Engle case? In light of it. Because, you know, the question that seems to come to mind is you've got a case in which, you know, the question is whether the defendant brought it up, but we'll get to the sentence itself. Pre-booker, isn't it different post-booker in terms of how to – is this not a variance? It is. In essence, it is a variance. Yes, Your Honor. If it's a variance, then Engle says, you know, it's a tax case because the government brought that case sort of different, but the argument was the court didn't consider these factors, and the court says you've got to consider these factors. Absolutely. This judge didn't even mention them. In Judge Hudson, in this case, Your Honor? Didn't mention them. Well, and I do beg to differ on that, and I'll get to the point of that. The Engle case and the Linn case. We did not specifically address the issues of Engle or, frankly, of Linn. But with a little background, I think I can address the issue. What do you mean? You don't mean you ignored it? You mean it wasn't applicable or what? No, it was not specifically raised, and if I may provide just a little – Engle doesn't seem to say it has to be raised. It seems to say the judge has the responsibility because that was a tax case. The other way it was going around, it was dealing with the government coming and saying, wait a minute, the judge didn't consider these factors in here. It was a flip situation where you normally would sit, I guess, and we agreed. You've got to consider those factors in there. And then Linn sort of deals with the same kind of issue. I mean, there's this onus that if you're going to impose a sentence, the severance sentence of this, you've got to discuss these factors. Absolutely. So the question here is, did the trial judge discuss those factors or consider them? Yes. In fact, the court did. And that was the point, is that now, after Booker, the guidelines have to be considered. They have to be properly calculated, and they have to be taken into account at sentencing along with the other 3553A factors. And the policy of the sentencing commission under Ingle, the policy statement position of it. Absolutely. And the policy – but I think it was Kimbrough that said that policy statements are – or that the sentencing court can certainly – is entitled to consider the policy statements that are set forth in the guidelines, including the empirical data that may be set forth in the guidelines. Well, I'm talking about what Ingle says, that relevant policy statements issued by the sentencing commission. Again, this was the case on the other side, and this is coming out of Ingle from this – that's the basis for overturning it. They had these policy statements dealing with this tax business there. Here you clearly have policy statements here, and the policy is that these are going to be concurrent. You've got a guy who – just revisit the facts so I make sure I understand what's going on. These cases sort of run together during the course of the day. But revisit the facts for me in terms of how this individual is in a position where he receives this consecutive sentence, but there are others involved, and how that all comes into play. Certainly, Your Honor. And it's all set forth in the pre-sentence report, which is contained in Volume 2. But just as a summary, Mr. Johnson was one of four individuals who would go out and rob banks. There were 24 robberies, as I understood. There were 24 that the United States was able to identify. He was involved in how many? Three. And he was the younger of them? He was indeed the younger of them. He was, I believe, at the time of the robberies – well, they spanned a number of years. And so he was in his 20s at the time. So they brought him in to – and what did he do? He was sort of the sub when one of the others was not available. But his job was to enter the bank, and as one of the less-involved members, his job was to secure the teller area. As I understand it, I just want to kind of move it because I don't think we need to get too deep. I want to make sure I'm thinking like you're thinking on it. But I understand that there was that robbery in Fredericksburg. The robbery in Fredericksburg. That's the one that went to the state court and received a 24th sentence. Nobody else got a state sentence. Yes, they did. So others did, but the chief protagonist in this, what was his name? His name was Mustafa Nayeem. He didn't get one. No, Your Honor, he did not. And if I may explain why, because the district court – this is relevant. I don't think it's relevant. I don't want to get into his sentence at that time. That's another issue in the case. But I want to make sure I got the facts right before I ask the question dealing with this. So he gets this 24th sentence. Johnson does from here. Then you have a trial in the federal court, and it basically encompasses some of the same conduct. Not exactly. He was indicted with a conspiracy in federal court that started with the first robbery that he committed with this group, and that was in January of 2009. It also included a robbery in May of 2010, and it included the robbery in Fredericksburg in, I believe it was November of 2010. That robbery, Mr. Johnson and two of his co-conspirators were actually caught fleeing the robbery. And so Mr. Johnson and his two other co-conspirators were tried – or not actually tried, they pled guilty in the circuit court for the city of Fredericksburg and were sentenced. Mr. Johnson received a sentence of, I believe, 40 years with 20 years suspended on entering a bank to commit larceny, and that was his charge. Plus he got three years for a mandatory firearm charge in the state, plus he got a year for wearing a mask in public as a part of all of that. So we would just say – A sentence in the federal court of? Now, in the federal court, when his guidelines were calculated, they were calculated and there's no argument that the guidelines themselves were not properly calculated. Everybody agrees it's very complex the way the guidelines are calculated for purposes of a robbery, especially where you have a conspiracy that charges three separate robberies. Under the guidelines, they are treated as if he pled guilty to three separate conspiracies involving three separate robberies. And the reason why that's significant is because that provides the basis, if you will, for the court looking at what sentence would be appropriate but not greater than necessary given the circumstances of the case, the seriousness of the case. That's what the judge articulated, is what you just said? The judge articulated that? In much more general terms, yes, he did, and I'll get to that momentarily. He said a lot of stuff, a whole lot of different than that now. Some very inconsistent statements he's saying in here from what you just said. Well, from the context, and it helps, I think, to understand a little bit of the context, two things. Number one is that the government did include that Fredericksburg robbery in the conspiracy so that the defendant and his attorney would have the opportunity to argue for a partially concurrent or concurrent sentence. That was part, frankly, of the plea negotiation, and the reason for that is if we had not included it, the defendant's guideline range would have been 151 to 188 months just based on the January 2009 and May 2010 robbery because the Fredericksburg robbery would have been in his criminal history. That would have raised his criminal history. His offense level would have only been one point less, and his guideline range would have been the exact same for two robberies, and we would have never gotten to the issue of whether 5G 1.3 be applied because that Fredericksburg robbery would not even have been considered even in a fraction of the offense conduct. So as a part of plea negotiations, I said if we include it, this at least gives you the opportunity to argue it. I can't guarantee you, though, that the judge will even consider giving him a concurrent sentence given the fact that the guidelines are only going to come back to about 12 1⁄2 years, and if it runs concurrent with the Fredericksburg case, then he basically got no time for two serious armed robberies that occurred over a year prior to the Fredericksburg robbery. So don't count on winning that argument, but I will enter a plea basically in agreement with you in the statement of facts because there was no plea agreement, but just including that information in the statement of facts gave him the opportunity under the advisory guideline range to make that argument to the court, and he did make that argument to the court. And as a very seasoned defense attorney, he acknowledged the bottom line, which is whether we apply 5G 1.3B or 5G 1.3C, it's still going to be within the court's discretion because the guidelines are merely advisory. But the advisory book. But you have to consider it. Andrew and Lynn put a burden on the trial judge. It seems to me that's independent of all of these did you bring it up. Looks to be pretty explicit to me, and as I go through this record, it's not there. His explanation is, I mean, we've got cases that say it's not there. Well, and here's my point. Under 5G 1.3B, it says the sentence shall run concurrent. Under 5G 1.3C, which was clearly when the reference, and it is on the Joint Appendix page 55, the reference was to 5G 1.3, and defense counsel in his position says under 5G 1.3, this court has discretion to run the sentence consecutive, concurrent, or partly concurrent. That's the language of 5G 1.3C, not 5G 1.3B. Let me cut through some of the haze a little bit. As I understood what Mr. Green said, pointing to the Joint Appendix, he did mention 5G 1.3. He did. All right. And was 5G 1.3 included in the PSR? It absolutely was, which was the next point I was going to make. All right. I would call your attention to the Joint Appendix at page 77 and 78, after Mr. Johnson said he had nothing else to offer with respect to the appropriate sentence. The court says, well, Mr. Johnson, based upon the fact that you were involved in three robberies, based upon the fact that you were inside the bank and whether or not you were carrying a firearm, the level of intimidation was such that a number of these bank employees have had lasting psychological problems as a result of the way you threatened to basically abuse them. And the fact that you were on supervised release for the robbery at that time, all in my mind, do not warrant a concurrent sentence. So the sentence, therefore, will be imposed consecutively. Yes, Your Honor. At the top of page 79, he says, consists so many months before, they will also run consecutively to the sentence that you are currently receiving as a result, concurrently serving as a result of a sentence imposed by the Fredericksburg Circuit Court. Absolutely. Now, and then he goes into the 553A factors. Now, if that isn't considering whether or not he has the discretion to impose a sentence under 5G1.3, I don't know what is. And, frankly, that's exactly my argument. And when I came… Is your argument that that is an individualized assessment that's required by the case law here? Yes, Your Honor, it is. And is it required by Engle? Because it looks like to me the government argued very the same, total different argument in Engle. When you came up and you didn't have those factors, if you look at what the trial judge did there, you have a lack of an explanation. Not that he can't do both, but he's got to explain it. And you're saying that here this case is distinguishable from Engle because? Well, because for a variety of reasons. But one of the main reasons here is that, number one, the defendant did raise the issue and requested the sentence to run concurrent. It was addressed specifically in his position paper. It was then raised specifically before the district court. The district court then, knowing full well, because it is, in fact, and I will point the court, you asked about the pre-sentence report. It's on worksheet D of the pre-sentence report, which is Joint Appendix page 167, where it specifically says that there's an undischarged term of imprisonment. But in that section, it says, pursuant to, if you can read it, it says, pursuant to 5G1.3B, this conviction was not a basis for an increase in the instant offense. Now, we look at it and we say, well, wait a minute, how is that so? Because this actually increased the instant offense by one offense level. So instead of being a 31, he's a 32. So that did increase it by one offense level. But I think what is happening here is that the probation officer realized, looking at it, that if it wasn't included in the offense level, it would be included in the criminal history. And therefore, it did not affect, and this is where Gall and Kimbrough all focus, on the guideline range itself. And when we look at Engle, we're talking about the guideline range itself. Not the court's discretion to impose a sentence concurrently or consecutively, but whether the guideline range itself was properly computed. And it was, in fact. And then we look, he says, therefore, a sentence pursuant to 5G1.3C is warranted. But C doesn't say, don't run it concurrent. C says, court, you have the discretion to run it concurrent, consecutive, or partly concurrent. It is all in your discretion under C, which is a guideline provision, but also under 18 U.S.C. 3584, which states it's within the district court's discretion to impose a consecutive or concurrent or partially concurrent sentence. Except in very limited exceptions, not applicable here. I think there's a dispute that he has this discretion. The problem is, is the question is whether he articulated the factors as required by Engle, as required by Lynn, as required by Carter. A number, a line of cases that, post-Booker, that have gone down this, and they make it very explicit. And when you go through this record, the explanation you give is wonderful, but it is not exactly what the trial judge said. It would have been nice had he said those things you say here. But he didn't do that. If you give a good explanation, that might be a basis for him imposing his sentence, but that's not in this record. Well, and I think sometimes that when the records. It's required, because it's shown by the cases. It's not like I'm just saying it's a good idea. The cases are there. It says it is required that the judge does these things. If you're going to depart, you've got to do these things. But the real question here is, this is not, and I know that it sounds like word games, but this isn't really a departure. Because we're not talking about the guideline range itself. Where the court started was the properly computed guideline range. There's no dispute about that. The only question is, was it going to be a concurrent sentence, or was it going to be consecutive? And before I run out of my time, I do want to raise a very important issue. Let us assume for a moment that it was error, that the court should have applied 5G1.3B and not 5G1.3C. Even though all the parties agreed, the probation officer agreed, because of the net effect of this one inclusive robbery, whether it's on the offense or the criminal history side. And assume that he must consider the factors, all of the factors, and assume that he must consider the guidelines of the sentencing as Engle requires him to do. And he didn't do it. Let's assume that. Assuming he made the error of not applying that correct provision. The real question here is, where's the harm? Is it a harmless error? And this court has and can become involved in a assumed error, harmlessness inquiry. And the real question here is, is this a reasonable sentence, given all the facts and factors, as set forth in the pre-sentence report, which was accepted and made a part of the record, all the 3553A factors, which the court states specifically he considered? In other words, we can sentence him. We can make a sentence for him. Is that what you want us to do? No, not at all. The question is, is this court going to imply the same sentence if this court remands the matter for re-sentencing and says you must consider 5G1.3B? Are we going to end up with the exact same sentence? And the truth of the matter is, we are. You could, but it would require the judge to follow the case law on Engle and require him to at least consider those factors, and this explanation he gave is bare bones. I mean, you've given a wonderful explanation up in front of us, but that's not what the judge said. Well, what we do have is a man who was on supervised release for robbery, not a robbery involved in this conspiracy. He was on supervised release during the course of the first, the second, and the third robbery. I'm challenging the appropriateness of the sentence, so even if it was imposed, what I'm just simply saying is the case law requires the judge to follow a certain procedure here in doing it, and that the record is devoid of evidence to show that he did, in fact, do that. Your argument is not devoid of evidence that would show it, but that's not what he gave. He didn't give your argument. Thank you, Your Honor. I'm out of time. Thank you, Ms. Norwood. Mr. Drain. Thank you. Your Honor, unless there are further questions from the panel, Mr. Johnson would respectfully submit this case for a decision. The pre-sentence report referred to 5G 1.3? Yes. Counsel referred to it, and if I may turn. I believe it was page 168, Your Honor. And the defendant had no objections. I apologize. 167. I apologize. The defendant had no objections to the pre-sentence report? The defendant did not pose an objection to the admission. What did the pre-sentence report recommend with respect to the sentence? I believe on count one it recommended a sentence range of 151 months to, I apologize if I may turn to the correct page, 151 to 188 months. What did the court impose? The court imposed the 151 months on count one, Your Honor. And if I may turn to the sentencing transcript. And I'm looking at page 79 of the Joint Appendix Volume 1, the transcript. That will consist of 151 months on count one and 84 months on count two. Those sentences by law run consecutively. And then Judge Hutchin calculated that as a total of 235 months, and that is reflected on page 83 of the Joint Appendix. And, in fact, was not the November 19, 2010 bank robbery resulted in or there wasn't any additional criminal history points for that bank robbery because such robbery was considered in determining his offense level as relevant conduct. Yes, and it did increase his offense level by one point, I believe, from a 32 to a 33. I think there's something in 5G 1.3, 1.3C, that refers to whether or not another offense is included in determining the relevant conduct. In 5G 1.3 subsection C, Your Honor? C. C. In any other case involving an undischarged term of imprisonment, the sentence for the incident offense may be imposed to run concurrently or otherwise. I'm summarizing the otherwise. Yeah. We maintain that Section B is applicable to this case. Well, I understand that. But Section 3 can't. You're going to argue that Section 3 was an error? Section C. Section C. They added one point because it was relevant conduct for the subject offense of conviction, and so it increased his guideline range by one point. It did, and the way I read subsection B. I didn't say D. I said C as in Charlie. Absolutely. You absolutely did, and I keep running back to subsection B. I apologize. Well, no, it's my enunciation. Sorry about that. I don't know. We thank the court for consideration. Thank you, Mr. Green. I note you're court appointed. We appreciate very much your undertaking representation of this client. We'll come down and greet counsel and then go into our last case.
judges: William B. Traxler, Jr., James A. Wynn, Jr., Clyde H. Hamilton